IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 APR 21 PM 4:39

OFFICE OF THE CLERK

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GABRIEL ANTONIO CORDERO-REINOSO,

YOSKARLYS ESTEFANIA LOPEZ-GUEVARA,

CARLOS SABINO-PARRA, and

ALFREDO JOSE MAITA-ACIENSO

Defendants.

8:26CR54

INDICTMENT

18 U.S.C. § 1349
18 U.S.C. § 371

The Grand Jury charges:

At all times relevant to this Indictment,

## Introduction

1. A "jackpotting" attack is a type of cyberattack where criminals exploit vulnerabilities in Automated Teller Machines ("ATMs") or Interactive Teller Machines ("ITMs") of financial institutions by using malware to force the ATMs or ITMs to dispense cash without debiting an account.

2. "Malware" is an abbreviated term for "malicious software." Malware refers to software programs designed to damage or do other unwanted actions on a computer system.

3. "Ploutus" is a specific type of malware designed to be used in ATM jackpotting to force an ATM to dispense cash.

4. A "Raspberry Pi" device is a small, affordable type of computer with its own memory, processor, and drivers, with the malware to then deploy on the ATMs' or ITMs' computer.

5. Defendants and other members of the conspiracy known and unknown to the Grand Jury have used ATM jackpotting in the United States to steal millions of dollars from financial institutions in the United States. Typically, members or associates of the conspiracy would conduct surveillance, break into an ATM, and deploy malware intended to force the ATM to dispense the currency held within it.

6. Victim Bank-47 and Victim Bank-56 (collectively, the "Victim Banks") were both insured by the Federal Deposit Insurance Corporation.

7. Victim Credit Union-44 was insured by the National Credit Union Administration Board.

8. The Victim Banks and Victim Credit Unions were all Financial Institutions as defined in Title 18, United States Code, Section 20 (collectively, "the Victim Financial Institutions").

## COUNT I
### CONSPIRACY TO COMMIT BANK FRAUD

9. The factual allegations contained in paragraphs 1 through 8 of this Indictment are re-alleged as though fully set forth herein.

10. During the course of the conspiracy, ATM malware was generally deployed in three stages. The first stage involved installation of the hardware. Specifically, members of the conspiracy would typically gain physical access to the ATM, remove the data storage device (referred to as a hard drive, or solid-state drive) from the ATM, install malicious code onto the data storage device, and then reinsert the data storage device into the ATM. The second stage occurred when the malware was activated. Members of the conspiracy would activate the malware remotely, through special codes or commands. The malware employed would bypass the ATM's security systems, effectively taking control of the ATM's operations. Third and finally, a "dispense" command would be sent to the ATM. With the malware

bypassing the ATM's security systems, the ATM would then dispense cash until it runs out or the process is disrupted.

11. The process described in paragraph 10 typically involved multiple defendants working in concert to successfully complete an ATM jackpotting attack. Typically, members of the conspiracy would travel in advance before the ATM jackpotting attack to take pictures of the ATM, as well as the hardware and internal components, and to ensure that there was not a silent hood alarm on the ATM. Other co-conspirators, after surveillance had been completed, would then install the malware. After the malware was successfully deployed, other co-conspirators would go to the ATM to retrieve the cash after the dispense command had been effectuated. The malware used during the course of the conspiracy contained an executable file that would cause the malware to self-delete after the ATM jackpotting was complete. The purpose of this particular feature of the malware was to avoid detection if the ATM's software was forensically analyzed.

12. The ATM jackpotting conspiracy described herein was very profitable for the conspiracy, and the losses to the Victim Financial Institutions were sometimes well in excess of $10,000 at each ATM jackpotting attack. For example, on or about February 26, 2026, members of the conspiracy committed a jackpotting attack on an ATM at Victim Bank-56, located in Branson, Missouri, and obtained approximately $21,000 in illicit proceeds.

<u>Statutory Allegations</u>

13. From at least in or around January 2024 through at least in or around February 2026, in the District of Nebraska and in the Western District of Missouri, and elsewhere, the defendants, GABRIEL ANTONIO CORDERO-REINOSO, YOSKARLYS ESTEFANIA LOPEZ-GUEVARA, CARLOS SABINO-PARRA, and ALFREDO JOSE MAITA-ACIENSO, and

others known and unknown to the Grand Jury did: knowingly and willfully conspire, combine, confederate and agree among each other and with other persons to execute a scheme to defraud the Victim Financial Institutions in violation of Title 18, United States Code, Section 1344(1).

In violation of Title 18, United States Code, Section 1349.

## COUNT II
### CONSPIRACY TO COMMIT BANK BURGLARY AND FRAUD AND RELATED ACTIVITY IN CONNECTION WITH COMPUTERS

14. The factual allegations contained in paragraphs 1 through 13 of this Indictment are re-alleged as though fully set forth herein.

15. From at least in or around January 2024 through at least in or around February 2026, in the District of Nebraska, and in the Western District of Missouri, and elsewhere, the defendants, GABRIEL ANTONIO CORDERO-REINOSO, YOSKARLYS ESTEFANIA LOPEZ-GUEVARA, CARLOS SABINO-PARRA, and ALFREDO JOSE MAITA-ACIENSO, and others known and unknown to the Grand Jury knowingly conspired and agreed with each other to commit acts and offenses against the laws of the United States, namely:

    a. to enter and attempt to enter a building used in whole and in part as a bank whose deposits were then insured by the Federal Deposit Insurance Corporation and by the National Credit Union Administration Board, with the intent to commit a larceny, in violation of Title 18, United States Code, Section 2113(a);

    b. to knowingly and with intent to defraud access and attempt to access a protected computer without authorization and by means of such conduct to further the intended fraud and obtain something of value, to wit: United States currency, in violation of Title 18, United States Code, Section 1030(a)(4); and

c. to knowingly cause the transmission of a program, information, code, and command and as a result of such conduct, intentionally cause damage without authorization to a protected computer, and cause loss to one or more persons during a 1-year period from the defendant's course of conduct affecting one or more protected computers aggregating at least $5,000 in value, and cause damage affecting 10 or more protected computers during a 1-year period in violation of 18 U.S.C. §§ 1030(a)(5)(A) and 1030(c)(4)(B).

16. The object of the conspiracy was to be accomplished by the manner and means as described in Paragraphs 9-12 above, which are re-alleged and incorporated as if set forth herein.

17. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the District of Nebraska and elsewhere:

a. On or about February 5, 2026, defendant GABRIEL ANTONIO CORDERO-REINOSO and others known and unknown to the Grand Jury attempted to commit a jackpotting attack at an ATM located at Victim Bank-47 in Lincoln, Nebraska.

b. On or about February 27, 2026, GABRIEL ANTONIO CORDERO-REINOSO, YOSKARLYS ESTEFANIA LOPEZ-GUEVARA, and ALFREDO JOSE MAITA-ACIENSO and others known and unknown to the Grand Jury committed a jackpotting attack on an ATM at Victim Bank-56, located in Branson, Missouri, and obtained approximately $21,000.

In violation of Title 18, United States Code, Section 371.

## FORFEITURE

18. The allegations contained in Count I of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

19. The allegations contained in Count II of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

20. The allegations contained in Count II of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(B), and 1030(i); and Title 28, United States Code, Section 2461(c).

21. Upon conviction of an offense in violation of Title 18, United States Code, Section 1349, set forth in Count I of this Indictment, the defendants, GABRIEL ANTONIO CORDERO-REINOSO, YOSKARLYS ESTEFANIA LOPEZ-GUEVARA, CARLOS SABINO-PARRA, and ALFREDO JOSE MAITA-ACIENSO, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982(a)(2)(A), any property, real or personal, involved in such offense and any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s).

22. Upon conviction of an offense in violation of Title 18, United States Code, Section 371 set forth in Count II of this Indictment, the defendants, GABRIEL ANTONIO CORDERO-REINOSO, YOSKARLYS ESTEFANIA LOPEZ-GUEVARA, CARLOS SABINO-PARRA, and ALFREDO JOSE MAITA-ACIENSO, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982(a)(1)(C) and Title 28, United States

Code, Section 2461(c), any property, real or personal, involved in such offense and any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s).

23. The property to be forfeited includes, but is not limited to, the following:

   a. A sum of money equal to the total amount of proceeds traceable to such offenses for which the Defendants are convicted at least in the amount of $6,147,321.00.

24. If any of the property described above, as a result of any act or omission of the defendant(s):

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to Tite 18, United States Code, Sections 981(a)(1)(C), 982(a)(2) and (A) and (B), 1030(i); and Title 28, United States Code, Section 2461(c).

A TRUE BILL.

_____
FOREPERSON

The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

UNITED STATES OF AMERICA,
Plaintiff

LESLEY A. WOODS
United States Attorney
District of Nebraska


_____

SEAN P. LYNCH, #25275
Assistant U.S. Attorney

DANIEL PACKARD #21991
Assistant U.S. Attorney

FRANK LIN
Senior Counsel, CCIPS

NATHANIEL LOWRY
Trial Attorney, CCIPS

JULIE A. CHILDRESS
Trial Attorney, Joint Task Force Vulcan
United States Department of Justice

KATELAN MCKENZIE DOYLE
Trial Attorney, Joint Task Force Vulcan
United States Department of Justice